THE STATE OF OHIO, APPELLEE, *v.* JACKSON, APPELLANT.

(No. 3904—Decided April 12, 1948.)

Mr. *Alva J. Russell,* prosecuting attorney, and Mr. *Jackson B. Morris,* for appellee.

Messrs. *Moyer & Benedict,* for appellant.

DOYLE, P. J.   David Jackson was indicted by the grand jury of Summit county and charged in two separate counts with the crime of incest with 'his daughter Jennie Lee (a juvenile).   Accompanied by counsel, he was arraigned in the Court of Common Pleas, and there entered a plea of not guilty.   The record shows no objections to the form of the indictment.

Subsequently, the case was tried to a jury, which returned a verdict of guilty on each count in the indictment.   Following the overruling of a motion for a new

trial, he was sentenced to the penitentiary, where he is now confined. The convict has now appealed to this court on questions of law.

■ It is claimed that ''The court erred in overruling the defendant's motion to quash the second count of the indictment.''

It appears that, following the impaneling of the jury, counsel for the defendant orally moved the court to quash the second count in the indictment, and stated as his reason that it is bad on the ground of duplicity. The court overruled the motion.

This count is in part as follows: ''That the said David Jackson, * * * being then and there a married man, to wit, being then and there married to one Beatrice Jackson, did, on numerous occasions, between the 6th day of December, 1944, and the 6th day of December, 1946, commit adultery with Jennie Lee Jackson, by then and there having sexual intercourse with the said Jennie Lee Jackson, the said Jennie Lee Jackson being then and there the daughter of the said David Jackson, as the said David Jackson, and the said Jennie Lee Jackson, then and there well knew * * *.''

The complaint in the instant case is similar to that in *Barnhouse* v. *State,* 31 Ohio St., 39 (decided in 1876), in which the Supreme Court dismissed the prisoner after conviction because the single charge in the indictment for incest upon which he was tried was regarded as having charged several offenses (and therefore bad for duplicity), in that it alleged ''the criminal act to have been committed continuously through a specified period of years.''

After this and other decisions of a like character, the Supreme Court in 1925 commented as follows: ''The entire subject of duplicity in criminal pleading is for the most part involved in technicalities calcu-

lated to serve persons accused of crime in their efforts to escape by technicalities much more than it is calculated to aid in promoting substantial justice." *State* v. *Peters,* 112 Ohio St., 249, at p. 262, 147 N. E., 81.

Statutes now extant (Section 13439-10, General Code, and others) prevent the perversion of justice which seems so apparent in the *Barnhouse case,* cited above.

Section 13439-11, General Code, provides:

"The accused shall be taken to have waived all defects which may be excepted to by a motion to quash or a plea in abatement, by demurring to an indictment, or pleading in bar or the general issue."

Section 13437-28, General Code, provides:

"No indictment * * * shall be quashed, * * * or motion to quash be sustained, * * * nor shall any conviction be set aside or reversed on account of any defect in form or substance of the indictment * * *, unless the objection to such indictment * * *, specifically stating the defect claimed, be made prior to the commencement of the trial, or at such time thereafter as the court shall in its discretion permit."

These statutes are *in pari materia,* and are controlling in the case under review. When read together, they mean that the motion to quash must be made not only prior to the commencement of the trial, but also prior to pleading the general issue, unless the court, at a later time, *in its discretion,* will entertain such a plea.

The record before us shows (1) a plea of not guilty; (2) no request to withdraw the plea and motion to quash; (3) the impaneling and swearing of the jury (at which time the trial commenced and the defendant was placed in jeopardy); and (4) the oral motion to quash the indictment immediately prior to the presentation of the case to the jury.

It is our conclusion that the court did not err, either by abuse of discretion or otherwise, in its refusal to sustain the motion.

See 21 Ohio Jurisprudence, Indictment and Information, Section 133, and cases therein cited.

■ It is further claimed that the court erred in permitting two other daughters of the defendant to testify to the defendant's conduct toward them. One testified that her father had sexual intercourse with her on various occasions when she was of about the age of the prosecutrix (twelve to thirteen years). The other testified that her father had asked her to submit to sexual intercourse, but that she had repulsed him.

It may be tersely stated that, in criminal prosecutions, motive is always relevant. "Men do not ordinarily commit grave crimes unless there is, in their minds, a motive strong enough to overcome the natural repugnance against crime and the fear of punishment which usually follows detection." *Son* v. *Territory of Oklahoma,* 5 Okla., 526, 49 P., 923, quoted in I Wigmore on Evidence (3 Ed.), Section 118.

It has long been recognized that, since specific types of emotion or passion in persons are likely to lead to the doing of specific acts, the presence of such emotion or passion in a person charged with crime prior to the time of the crime, has an evidential bearing as to the existence of the same emotion or passion at the time in question. When incest is charged on trial, the use and purpose of such evidence is to show an unnatural sexual desire, at the time charged, as indicating an act of intercourse, and thus the evidence indicates the quality of degenerate and perverted emotion possessed by the person charged with the crime. II Wigmore on Evidence (3 Ed.), Section 400.

There is authority in this state which holds that such evidence is competent in cases where the various acts of incest are all with the same person.

"In sexual crimes with consent, including incest, other and similar adulterous or licentious acts or conduct by the defendant toward the prosecutrix, whether prior or subsequent to the date of the specific act charged in the indictment, are, if not too remote, admissible for the purpose of showing the adulterous or incestuous disposition of the defendant toward the prosecutrix and the illicit and continuous sexual relations existing between them." *State* v. *Reineke,* 89 Ohio St., 390, 106 N. E., 52, L. R. A. 1915A, 138.

The principles of evidence applied to the above case may be likewise applied to the instant case. The evidence is not at all admissible for the purpose of raising a presumption of guilt on the hypothesis that a man who commits one crime will probably commit another, but for the sole purpose of showing a passion, an emotion, a degeneracy, of exactly the same type prompting the commission of the offense laid in the indictment. See *Brown* v. *State,* 26 Ohio St., 176.

The separate acts of incest by the defendant with his several daughters are "so related to the offense for which the defendant is on trial that they have a logical connection therewith and may reasonably disclose a motive." *State* v. *Moore,* 149 Ohio St., 226. It is true that the evidence tends to prove habitual moral degeneracy and lascivious conduct toward persons other than the prosecuting witness, but the same filial relationship exists between these persons and the defendant, as exists between the prosecuting witness and the defendant—father and daughter. It is this relationship in the case at bar which marks the gravamen of the offense and constitutes the "logical connection" between the acts of incest with different persons.

■ Of academic interest is the case of *Barnett* v. *State,* 104 Ohio St., 298, 135 N. E., 647, 27 A. L. R., 351. This case, however, is not dispositive of the question

here, because evidence of like acts of sodomy upon children other than the prosecuting witness was there held competent on the theory of "identity," and not on the theory of motive, as evidenced by the syllabus in the case.

■ The latest pronouncement in this state on the rules of evidence here under discussion appears in *State* v. *Moore, supra,* in the following language: "1. The like acts or other acts which may be shown against a defendant in a criminal case, within the contemplation of Section 13444-19, General Code, are acts of a character so related to the offense for which the defendant is on trial that they have a logical connection therewith and may reasonably disclose a motive or purpose for the commission of such offense." The statute cited (Section 13444-19, General Code) is declarative of the common law heretofore discussed in this opinion.

It is our conclusion that, in the case now before us for decision, the evidence was competent for the purpose of showing motive, and that the trial judge properly charged the jury on that question.

■ Examination has been made of the other errors claimed, and we find no error to exist of a prejudicial character. *State* v. *Petro,* 148 Ohio St., 473.

The judgment is affirmed.

*Judgment affirmed.*

STEVENS and HUNSICKER, JJ., concur.